# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No. 06 CR 760 |
| | ) | |
| **WILLIAM R. JACKSON** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant William Jackson ("Jackson") has filed a motion to dismiss the three-count indictment against him, arguing that prosecution of this indictment would violate the Double Jeopardy Clause of the Fifth Amendment. The charges in the indictment relate to Jackson's purported conduct during the pendency of a bankruptcy proceeding in which he represented the debtor. Jackson contends that he was already punished for the offenses charged in the indictment when the bankruptcy court twice found him in contempt. For the following reasons, I deny Jackson's motion.

I.

The indictment in this case charges Jackson with violations of 18 U.S.C. § 157(3) (Count One); 18 U.S.C. § 152(5)[1] (Count Two); and 18 U.S.C. § 153 (Count Three). Count One alleges that Jackson devised and intended to devise a scheme or artifice to defraud the bankruptcy court and the bankruptcy trustee by falsely stating to

---

[1] Count Two of the indictment charges that Jackson violated "Title 18, United States Code, Sections 152(5) and 2." However, the "2" appears to be a typographical error; neither side claims that 18 U.S.C. § 152(2) is part of the charge or discusses its applicability to this motion.

the court that $28,000 he received from the debtor was in his firm's trust account when in fact he had already converted the funds. Count Two alleges that Jackson knowingly and fraudulently received a check for $6,098.16 payable to the debtor with the intent of defeating the provisions of title 11. Count Three alleges that Jackson knowingly and fraudulently appropriated for his own use approximately $6,098.16 belonging to the estate of the debtor.

These allegations are premised on Jackson's purported actions during a proceeding before the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in *In Re Chicago Truck Center, Inc.*, Case No. 02 B 10050 (the "bankruptcy proceeding").[2] Jackson represented the debtor Chicago Truck Center, Inc. (the "debtor") and Robert Hatcher ("Hatcher") during the bankruptcy proceeding. Jackson filed a document entitled "Disclosure of Compensation of Attorney For Debtor" certifying he had received approximately $28,000 in legal fees from the debtor. A few months later, the bankruptcy trustee filed a motion for a rule to show cause and an order compelling Jackson to disgorge fees, arguing that the fees paid to Jackson were facially excessive. The bankruptcy court set a hearing for that motion for February 14, 2003. Jackson failed to appear at that hearing, and

---

[2]The summary of the events during the bankruptcy proceeding is based on the government's submission in opposition to Jackson's motion to dismiss; Jackson has not disputed its veracity.

the bankruptcy court ordered him to disgorge his entire attorney's fee and to appear at a hearing on March 4, 2003. The bankruptcy court also issued a rule to show cause that, in part, ordered Jackson to show cause why he was not in contempt of court for a violation of certain of the court's earlier rulings.

Jackson subsequently filed a motion to vacate the bankruptcy court's order, explaining he had been unable to attend the February 14 hearing. The bankruptcy court heard his motion on March 4, 2003. At the hearing on his motion Jackson allegedly represented to the bankruptcy court that he had received $28,691 in legal fees from the debtor, that he deposited that entire amount in his firm's trust account, and that the entire amount remained in his trust account as of the date of the hearing. The same day of the hearing the bankruptcy court allowed Jackson to file a fee petition and set an evidentiary hearing on April 9, 2003 (later reset to April 29), on his fee petition and the February 14 rule to show cause.

On April 11, 2003, Jackson provided a deposition related to the bankruptcy proceeding. In that deposition Jackson allegedly admitted that certain of the funds he received from the debtor were never placed in his trust account and that he used all of the funds he received from the debtor for his own personal and business use.

On April 29, 2003, the bankruptcy court held an evidentiary hearing on Jackson's motion to vacate the court's February 14 order (the "April 29 evidentiary hearing"). At the conclusion of that

3

hearing the bankruptcy court stated that it believed that Jackson had made "a very serious misrepresentation" concerning whether he had escrowed and drawn down the $28,000 in question, and that in part because of the bankruptcy court's "concern over the safety of the funds," the bankruptcy court would order Jackson to return the $28,000 to the estate. The bankruptcy court further stated that Jackson's receipt of the funds was an unauthorized transfer, and that setting aside whether this was the proper procedure for the trustee to seek a return of the funds, the bankruptcy court would order Jackson to return the $28,000 to the trustee by May 5, 2003. The bankruptcy court further stated that if Jackson did not comply with the order, the court would issue a rule to show cause why he should not be held in contempt of court, and would begin fining Jackson $500 for each day after May 6, 2003 that he did not return the $28,000.

The record shows that Jackson did not return the $28,000, and on May 16, 2003, the trustee filed a motion for a rule to show cause. On May 20, 2003, the bankruptcy court issued a rule to show cause against Jackson requiring him to show why he should not be held in contempt, and fined him $500 per day beginning May 6, 2003 for every day that he had not returned the $28,000. The court set a June 17, 2003 hearing on the rule to show cause. The court also took Jackson's petition for fees under advisement.

4

At the June 17, 2003 hearing the bankruptcy court issued a judgment (the "June 17 judgment") against Jackson on the rule to show cause. The bankruptcy court's judgment stated, in relevant part:

> A judgment is hereby entered against Jackson as follows: (a) Jackson is in contempt of the Rule for failing to abide by it; (b) a money judgment is entered against Jackson and in favor of [the trustee] in the sum of $28,000.00; and (c) a money judgment is hereby entered against Jackson and in favor of [the trustee] in the sum of $500.00 per calendar day from an [*sic*] including May 6, 2003, until including the day all sums due under this judgment are paid in full as a sanction under the Court's inherent powers and 11 U.S.C. § 105 for Jackson's violation of the Rule.

On July 17, 2003, the bankruptcy court issued a memorandum opinion denying Jackson's fee petition in its entirety. The bankruptcy court found that Jackson would have been allowed $4,000 in fees, but for the bankruptcy court's conclusion that Jackson had made false statements to the court. The bankruptcy court entered sanctions against Jackson under 28 U.S.C. § 1927. On October 7, 2003, the bankruptcy court ordered Jackson to appear for a deposition to discover his assets and to produce documents related to the discovery of his assets. The trustee filed a rule to show cause against Jackson for failing to produce documents or appear for his deposition. Jackson was subsequently deposed on November 5, 2003. The rule to show cause hearing was then continued several times, but according to the government's pleadings, at some point

5

Jackson agreed to pay the judgment at the rate of $600 per month. Also according to the government's pleadings, Jackson made one such payment and then ceased further payments. Jackson asserts that because he has not paid the amount due, and because the $500 per day has continued to accrue against him, as of October of 2005 he would have had to pay approximately $400,000 in order to satisfy the June 17 judgment, and this amount has continued to grow since then.[3] The government does not contest that this figure is accurate.

On May 18, 2006, the bankruptcy court entered a memorandum opinion holding Jackson in contempt for converting estate property post-petition and causing harm to the debtor's estate (the "May 18 memorandum opinion"). According to the findings of fact set forth in the memorandum opinion,[4] on July 29, 2004, GM issued a check in the amount of $6,098.16 made out to the debtor. Hatcher, who had possession of the check, met with Jackson to discuss returning the check to the trustee. Hatcher endorsed the check and gave it to Jackson for him to "take care of it." After receiving the check, Jackson incorporated a business under the name Chicago Truck

---

[3]This court estimates that over 1300 calendar days have passed between May 6, 2003 and the present, meaning that Jackson would now owe over $650,000 in addition to the original $28,000 the bankruptcy court ordered him to return.

[4]These findings were based on findings of fact and conclusions of law submitted by the trustee; both Jackson and the trustee were provided a schedule to file proposed findings of fact and conclusions of law, but Jackson did not file any.

6

Center, Inc., the same name as the debtor in the bankruptcy proceeding. He then went to a bank, opened an account in the name of Chicago Truck Center, Inc., and endorsed the check from GM and deposited it into the newly-opened account. A few days later, Jackson wrote a temporary check to himself from the account in the amount of $6,060. He withdrew the final $35.00 from the account seven days later.

The May 18, 2006 memorandum opinion further noted that Jackson was prevented from introducing any evidence at the evidentiary hearing on the motion for contempt because he had failed to file an exhibit or witness list within the time the bankruptcy court specified for such filings. Jackson did argue at the evidentiary hearing that Hatcher's testimony was false. The bankruptcy court nevertheless concluded, in the memorandum opinion, that Jackson took funds belonging to the bankruptcy estate, and that he had defrauded his client, the trustee, and the court by cashing the check. The court therefore held Jackson in contempt for converting estate property post-petition and causing the estate harm in the amount of $6,098.16. The May 18 memorandum opinion ordered Jackson to repay that amount to the estate within 30 days. The bankruptcy court held a status hearing on July 29, 2006 to determine whether Jackson had purged the contempt, and the hearing eventually concluded on August 8, 2006. According to the government, the record is unclear whether Jackson ever returned the $6,098.16.

II.

Jackson contends that the bankruptcy court already found him in contempt for the actions which are the subject of Counts One, Two and Three of the indictment. According to his argument, Count One seeks to punish him for actions which were already punished by the bankruptcy court's June 17 judgment. Counts Two and Three seek to punish him for actions already punished by the May 18 memorandum opinion.

The Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense . . . and then only when such occurs in successive proceedings." *Hudson v. United States*, 522 U.S. 93, 99 (1997) (emphasis in original) (internal citation omitted).[5] The Supreme Court has previously concluded that the protection of the Double Jeopardy Clause applies to criminal contempt prosecutions. *See United States v. Dixon*, 509 U.S. 688, 696 (1993). Clearly the successive proceeding requirement articulated in *Hudson* would be met here, but I must also determine whether the actions the bankruptcy court took against Jackson were "punishment" and whether they were for the "same offense" as now charged in the indictment.

---

[5]The Double Jeopardy Clause also protects against successive prosecutions for the same criminal offense. *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)).

8

III.

I first consider whether the bankruptcy court's June 17 judgment and the May 18 memorandum opinion issued contempt citations that were civil or criminal in nature. As the Supreme Court set forth in *Hudson*, to determine whether a particular punishment is criminal or civil, I must first examine the statute used to inflict the punishment and determine whether the legislature indicated their intent. 522 U.S. at 99 (internal citations omitted). Even if the legislature's intent was for a civil penalty, I must still ask whether the statutory scheme was punitive in effect. *Id.* (internal citations omitted). I conclude that the June 17 judgment resulted in a criminal punishment, but the May 18 memorandum opinion did not.

A. June 17 Judgment

The June 17 judgment found Jackson in contempt, assessed a monetary judgment of $28,000 against him and in favor of the trustee, and further entered a money judgment, against him and in favor of the trustee, of $500 per calendar day from May 6, 2003, until Jackson paid all sums due under the judgment. The judgment notes that it was entered "as a sanction under the Court's inherent powers and 11 U.S.C. § 105." 11 U.S.C. § 105 does not specifically empower a bankruptcy court to issue civil or criminal contempt citations, but provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to

9

carry out the provisions of this title." This statute appears to allow for both criminal and civil contempt citations. Further, a federal court's inherent power to sanction encompasses both civil and criminal sanctions. *See United States v. Providence Journal Co.*, 485 U.S. 693, 701-02 (1988) (recognizing inherent authority of a federal court to "initiate a criminal contempt proceeding for disobedience of its order") (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987)); *Schmude v. Sheahan*, 420 F.3d 645, 649 (7th Cir. 2005) ("[A]ll courts are vested with an inherent power 'to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

The Supreme Court also addressed whether fines levied as part of a contempt citation are a criminal or civil penalty in *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994), in which the Court found that contempt fines levied against a union for violating a labor injunction were a criminal penalty for which the union had a right to a trial by jury. The Court first noted that while the court issuing a contempt citation may state an intention for the citation to be civil or criminal, the Court's stated purpose of the citation is not determinative. *Id.* at 828 (internal citation omitted). The Court stated that a contempt fine is considered a civil penalty if it coerces a defendant to comply

10

with a court's order or compensates the complainant for the loss sustained. *Id.* at 829 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). If a contempt fine is not compensatory, the contemnor must be afforded an opportunity to purge the fine, so that even a "'flat, unconditional fine' totaling as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.* (citing *Penfield Co. v. SEC*, 330 U.S. 585, 588, 590 (1947)).

In *United States v. Lippitt*, 180 F.3d 873 (7th Cir. 1999) the Seventh Circuit expanded on this basic test, holding that "what starts as coercive can over time become punitive." *Id.* at 877. In *Lippitt*, the Seventh Circuit considered whether re-sentencing a defendant after he failed to pay a fine assessed as part of his original sentence violated the Double Jeopardy Clause. The court did determine that civil contempt can become a criminal penalty if the contemnor cannot pay the fine and therefore has no opportunity to reduce the fine through compliance. *Id.* (internal citations omitted). Second, "the continued contempt order could also lose its coercive force if there were simply no reasonable possibility that the contemnor would ever comply with the court's demands." *Id.* The example the court gave was the imprisonment of a witness for refusing to testify when the witness is imprisoned for so long

that it is clear he will never comply such that "continued incarceration can only be considered punitive." *Id.* at 878.

Here, the portion of the June 17 judgment requiring Jackson to pay $28,000 to the trustee was clearly intended to compensate the trustee for the loss it sustained, so that portion of the judgement was civil and not criminal. The bankruptcy court stated in its findings after the April 29 evidentiary hearing that it intended to hold Jackson in civil contempt if he did not return the money within the time specified, but the bankruptcy court's intent that the contempt be civil is not determinative. *See Bagwell*, 512 U.S. at 828. In fact, the portion of the judgement requiring Jackson to pay $500 for each day that he did not satisfy the amount due has, under the standard articulated in *Lippitt*, morphed from coercive to punitive. 180 F.3d at 877. Jackson has filed for bankruptcy multiple times, and as of this date has not satisfied the judgement. He now must pay at least $400,000 to satisfy the judgement, and there is substantial evidence that he is without means to pay this amount. This penalty has ceased to be coercive and has become punitive.

B. May 18, 2006 Memorandum Opinion

Unlike the June 17, 2003 judgment, I find that the contempt citation the bankruptcy court issued to Jackson in its May 18, 2006 memorandum opinion is civil and not criminal. The May 18 memorandum opinion found Jackson in contempt and assessed a

12

monetary judgment against him under the bankruptcy court's power to assess a "civil contempt" citation under Federal Rule of Bankruptcy Procedure 9020(b), Local Bankruptcy Rule 9020-1, and 11 U.S.C. § 105. The May 18 memorandum opinion held Jackson in contempt for converting property belonging to the estate, and ordered Jackson to repay the estate $6,098.16, which was the amount the bankruptcy court concluded that Jackson had taken. This was not a fine, but rather a civil penalty intended to compensate the estate for the loss it sustained. *See Bagwell*, 512 U.S. at 829. Because it is not a fine, the Seventh Circuit's analysis in *Lippitt* of the circumstances under which a fine can become coercive do not apply. *See* 180 F.3d at 877. There is no basis to conclude that this contempt citation, regardless of Jackson's ability to comply, was or could become a criminal penalty. Therefore, I conclude that charging Jackson with Counts Two and Three of the present indictment does not violate the Double Jeopardy Clause.

IV.

Because I conclude that the May 18, 2006 memorandum opinion did not assess a criminal penalty to Jackson, I need not consider whether it concerned the same offenses now charged in the present indictment. However, I must determine whether the charges in Count One of the indictment are for the same offenses for which Jackson received a contempt citation in the June 17, 2003 judgment. I conclude that they are not.

13

In *Dixon*, the Supreme Court clarified that courts should use the "same elements" test to determine whether two punishments are for the same offense within the meaning of the Double Jeopardy Clause. 509 U.S. at 696. The Supreme Court held in *Dixon* that defendants who were found in contempt for violating a condition of their probation that they not commit "any criminal offense" could not be later charged for the same crime for which they were previously found in contempt. *Id.* The "same elements" test, first articulated in *Blockburger v. United States*, 284 U.S. 299 (1932), "inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696 (citing *Blockburger*, 284 U.S. at 304). In *Dixon* the Supreme Court also explicitly overruled the "same conduct" test articulated in *Grady v. Corbin*, 495 U.S. 508 (1990), under which the Double Jeopardy Clause was said to bar a subsequent prosecution if, "to establish an essential element of an offense charged in that prosecution . . . the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *See Dixon*, 509 U.S. at 703-04 (quoting *Grady*, 495 U.S. at 510). The Seventh Circuit has interpreted the *Dixon* decision to require courts to "focus on the elements of the charged offenses rather than the underlying conduct." *United States v. Hatchett*, 245 F.3d 625, 632 (7th Cir. 2001).

Applying this test in the context of a contempt charge raises unique issues because contempt charges issued under a court's general power to find a party in contempt, as the bankruptcy court exercised in finding Jackson in contempt, do not have "elements" in the same way that a particular criminal charge does. Instead, the parties here agree, and it makes sense, that I should apply the same elements test by determining upon what elements the bankruptcy court relied to find Jackson in contempt in the June 17 judgment, and then determine whether those same elements are required to find him guilty of Count One of present criminal indictment. *See Dixon*, 509 U.S. at 699-701 (applying the "same elements test" by examining the findings of the court that originally found the defendants in contempt of court).

Count One charges that, in violation of 18 U.S.C. § 157(3), Jackson devised a scheme to defraud the bankruptcy court and the bankruptcy trustee by attempting to delay the bankruptcy court's order for him to disgorge attorney's fees. Count One further charges that, as part of this scheme, Jackson made a false representation to the bankruptcy court that he had placed the $28,000 in attorney's fees in his firm's trust account, where it had always been escrowed, knowing that in fact the money was not in his trust account but had already been converted by him.

The government contends that this charge is not the same offense as the offense that formed the basis for the June 17

15

judgment. That judgment found Jackson in contempt of the court's rule to show cause issued on May 20, 2003 because Jackson had not returned the $28,000 pre-petition fee to the trustee as the May 20 rule required. The government contends that this is the only basis for the judgment, so that it clearly does not contain the same elements as the charge in Count One. In contrast, Jackson argues that I should also consider the findings the bankruptcy court made during the April 29 evidentiary hearing because the findings made by the bankruptcy court at the conclusion of that hearing "are the factual and legal underpinnings of the June 17, 2003 contempt order."

Even considering the findings that the bankruptcy court made during the April 29 hearing, however, the June 17 judgment does not meet the same elements test. Following the hearing, the bankruptcy court concluded that Jackson had made a misrepresentation when he told the bankruptcy court that he had escrowed the funds and not drawn them down. The bankruptcy court stated that because of its "great concern over the safety of these funds" it would order Jackson to return them. The bankruptcy court further concluded that Jackson's receipt of the $28,000 was an unauthorized transfer, and for that reason ordered Jackson to return the money to the trustee or face a coercive fine. Even taking an expansive view of the bankruptcy court's findings following the April 29 hearing, the bankruptcy court found Jackson in contempt because he failed to

16

return the $28,000 to the trustee after the bankruptcy court, expressing concern over the safety of the funds because it appeared that Jackson did not have them in escrow, ordered him to do so. To find Jackson guilty of Count One of the indictment, the government must show that Jackson knowingly devised or intended to devise a scheme to defraud the bankruptcy court and the trustee by attempting to delay the bankruptcy court's order to disgorge the attorneys fees. As the government argues, this requires a finding that Jackson had made a misrepresentation to the court about the whereabouts of the $28,000, and acted with the intent to defraud. These are distinct elements from the bankruptcy court's findings in holding Jackson in contempt, since that contempt was based on the bankruptcy court's conclusion that the funds properly belonged to the estate. Following the April 29 evidentiary hearing, the bankruptcy court only noted as a precursor to its findings that it was troubled by its belief that Jackson had made a misrepresentation to the court, but it did not hold Jackson in contempt because of this perceived misrepresentation. For these reasons, the elements of Count One and the findings of the bankruptcy court in holding Jackson in contempt in the May 18 judgment are separate and distinct from one another, and do not meet the "same elements" test. *See Dixon*, 509 U.S. at 696. I therefore conclude that charging Jackson with Count One of the present indictment does not violate the Double Jeopardy Clause.

V.

For the above reasons, I deny Jackson's motion to dismiss.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: February \_13\_\_, 2007